The final case for argument this morning is 14-3084, Smith v. OPM. May it please the court, my name is Jeffrey Stevens, I represent the petitioner in this case, Arlene Smith. 18 years ago, this court, in the case of Fox v. OPM, noted the requirement for a court that reflects a congressional compromise between providing for the protection of the financial interests of former spouses of deceased federal employees, and the concern that OPM might construe state court dispositions contrary to their intended effect. The case law since Fox seems to show a continuing failure by OPM that they are continuing to construe state court dispositions contrary to their intended effect, and that is causing a failure to the first goal of protecting the… So, you've got two state court provisions, and your reliance is on the 1991 provision as being specific enough? The 1987 provision, your honor, from the 1987 order, about the 20% interest in the vested interest. Well, that is the order that was considered by the board in their final order, and as we argued in our reply, the 1999 order was never considered. It was only… So, your position here on appeal is that your references to the 1999 order as being sufficient and having rehabilitated the earlier order? No, your honor. Our position is that the board erred by finding that the 1987 order did not establish a survivor annuity for Ms. Smith, however, even if the… Why would we look at the 1987 order if the 1999 order superseded it? Because that's the order that the board considered below. They never considered the 1999 order. No, but I think your friend has conceded that they erred in not looking at the subsequent order. So, why don't we look at the 1999 order, because I think the government argues that even that isn't sufficient to confer benefits. Your honor, the position of the petitioner is that regardless of how this court weighs in on the 1987 order, that a remand is appropriate, because the 1999 order was never analyzed below… So, is there a difference to the language in the 1999 order that you think clearly entitles your client to benefits? Well, I don't think it's clear, your honor, but it does have a separate provision for the amount of pay from Mr. Marshall's retirement pay that Ms. Smith would get. Sure, I mean, but the problem in all of these cases is that these orders don't clearly distinguish between ex-spouses getting portions of their retirement pay when the retired employee is alive, and survivor benefits after the employee dies. And that's what is the problem for you, is that this order has just indicated an intent for her to get survivor benefits after her former husband has died. Isn't that right? Yes, your honor. And it does talk about, I guess, it talks about in paragraph B, in paragraph E, about her getting $338.60 per month of his retirement benefits, but that doesn't say anything about survivor benefits. Yes, your honor, but the court in Fox said that you could look at extrinsic evidence as long as you weren't reading language into the order, and I think to understand what happened in the 1987 order, that the only reason they sought a modification of that was because OPM said this wasn't sufficient to establish the survivor duty. That's the whole reason they went back to seek the 1990 order. And if you look at that 1987 order, just to provide some extrinsic evidence for their intent, you could see there's reference to survivor spouse allowance, or surviving spouse allowance. What paragraph? Where are you looking at? You're looking at the 1987 order, wasn't it? Yes, your honor. Yes, your honor. But additionally, Mr. Marshall's election that he filled out at retirement also indicates that he had a former spouse who had a survivor annuity. Now, understand that that doesn't guide the court order, but it's the end of the QDRO. Yes, your honor. And we're looking at the 99 QDRO. Yes, your honor. Are you saying there's nothing in the QDRO that points to her getting survivor benefits as opposed to sharing in his retirement benefits? In the 1999 order, the only thing that is listed is the statement that, well, there are two things. One, that she would receive that $338 for life, to understand by itself is not sufficient language. However, there's also the added paragraph that states that regardless of whether the new spouse, at that point, is added. That's paragraph G, right? Yes, your honor. That's paragraph 7G. I thought that's what you would have pointed me to from the start, since it contains language about his second wife, is it his second wife, whatever, his last wife, as being named surviving spouse for pension and retirement benefits, except for those allocated to his first wife. And at least the context of that may not be clear, but it seems to suggest that it's talking about benefits for survivors. Yes, your honor. And that is what we believe. That's also why I think that because that paragraph isn't crystal clear that you should look at the extrinsic material from the 1987 order to see what their original intent was before they pared that language down to try to make it acceptable to OPM. And additionally, looking at that election, you can see that the clear intent was, of both the parties and the court, was to provide for survivor annuit, even if they were inexpert at navigating the career civil service retirement plan. I guess I'm really not clear. If we're looking at the 99 order, you've got several references. So is it, in fact, paragraph 4, which deals with the new paragraph 7g, the one you're relying on, is the thing that gives them the survivor annuity right? Or is it paragraph 2c? What is it you're arguing to us in this document that is clear enough? I mean, do you agree the standard is this order needs to be clear enough to indicate that we were talking about the survivor annuity? Yes, Your Honor. Do you agree with that? Yes, Your Honor. So what is it? Point us to what is clear enough in this document to satisfy us with this survivor annuity. Well, Your Honor, because there's a distinction between Ms. Arlene Smith will be provided $338 per month, and then the following paragraph 7g that's added that's about surviving spouse and Ms. Smith still having those rights, I believe that that's the same as the language that Maris' inspection board considered in Bliznik v. Bliznik. Well, let me try to understand what you're saying because I'm not seeing it right now. It's clear to me that v at least is talking about a share of his pension. And that's where we derive the $338, right, that says share of the pension. And then if you juxtapose that to 7g for the new wife, they're clearly talking about two things, pension and retirement benefits, and there they say except for those benefits allocated to the plaintiff. Well, why couldn't those benefits just refer to regular retirement benefits that don't include a survivor annuity? Because they talk about surviving spouse, Your Honor. And again, well, it's not actually drafted. She's not the surviving spouse. Why isn't it suggesting that the second wife gets all the pension and retirement benefits of the surviving spouse and the first wife only gets what she got, the $338? I understand, Your Honor, it seems very ambiguous to me because it wouldn't, she wouldn't be a surviving spouse until her husband had died. So if it's still carving out the $338 after she's a surviving spouse, it seems to suggest that that's a survivor benefit. But by referencing the same number in paragraph B, which is clearly just a share in his pension, it really kind of muddies the waters. Well, I don't think it's as ambiguous as it would be, Your Honor. If it just said that the plaintiff, Arlene Marshall or Arlene Smith, would receive $338 per month for life, although again, the board in Bluesnake v. Bluesnake. It would be a lot better if it said she'd receive $338 as a survivor benefit. It would, Your Honor, but again. Can I just ask you a technical question? I thought if she's getting a share of his pension benefits under B for $338 a month, that's when he's still alive, that's his pension. That's correct, Your Honor. Wouldn't her share, aren't, the survivor benefits are different. I mean, what the survivor gets as a survivor benefit is less than what the living person was getting as a pension benefit, right? Yes, Your Honor. Well, the intent, I believe, Your Honor, is for her amount to stay the same from just getting a portion of his retirement to getting a portion of the survivor benefit, not counting what the surviving second wife would get. So that she would get, continue to get the same amount that she was getting as a portion of his. I believe that's the goal of the order, Your Honor. Do you have any idea how much the surviving benefit is? Your Honor, I can only know from the paperwork I've seen from the board. They listed it as something like $1,100 a month that Ms. Smith was paid at one point, which was more than what this order contemplated. But again, I think that that was just OPM's calculation. You've got to use the names. Which Ms. Smith? Well, Ms. Smith is the petitioner. Ms. Marshall is the surviving spouse. Oh, right. No, so I wondered how much as the survivor's benefit that would be paid to the surviving spouse under this overall before you take the $368 out. Your Honor, I will... Do you think the $1,168 is that number and it was improperly paid to Ms. Smith first? And so the $1,168 is what... I do believe that that was probably an overpayment for Ms. Smith. That that's not what the order contemplated, but that is what OPM, when they... I guess what I'm getting at is the survivor benefit is really reduced. $368 could end up being 50%, 75% of the survivor benefit. And that might seem to be contrary to... It could be, Your Honor, but I believe that that's a determination that OPM would have to make. And I don't think they've done it since they never accepted either of these orders as acceptable for processing. There was a brief period of time when the initial administrative law judge at the board found that reversed OPM's determination when she was receiving a payment. But OPM had never accepted these orders as they were. Now, Your Honor, a moment ago I was talking about Bluznik v. Bluznik, which this court had decided with approval in Hawkinson v. OPM, which had similar language about where there's a distinction in the order between pension and what was called monthly payments for life. And in that case, the board determined that payments for life was sufficient to establish survivor annuity. And this court, in one line in Hawkinson, said lifetime monthly benefit, i.e., survivor annuity. So it's not a far stretch to read survivor annuity as being the meaning of language such as being payment for life or surviving spouse allowance. One of the problems for you is that that language about the rest of her life is followed by the phrase subject to the terms and conditions of said retirement plan. So that makes it far more ambiguous because I don't know what the confines of that is. I think, Your Honor, then what Judge Hughes mentioned a moment ago would apply, and yourself, that the amount she receives might be less depending on the survivor annuity. So I think that they're saying she should receive $338 for life. However, it might be less depending on how the career civil service retirement program worked. But the retirement plans generally do require the employee to make certain designations. I thought that your position is that the terms of the court orders would dominate whatever else, but for that subject to the retirement plan, the retirement plan doesn't necessarily mean who you designate as your beneficiary or survivor for annuity purposes. Does that make sense or not? Yes, Your Honor, and if you look at the election that Mr. Marshall did make in 2004 when he retired, or excuse me, December 2005 when he retired, his election does state that he has a surviving former spouse who has a survivor annuity, and then he was to attach his court order to his election. So we see that, and that's some proof of his intent to provide her a survivor annuity in their court orders. All right, why don't we hear from the government, and we'll restart the minutes, everybody. Thank you, Your Honor. May it please the Court. The judgment of the MSPB should be affirmed in this matter because the 1987 divorce decree of Ms. Smith as modified in 1999. Did OPM consider the 1999 order in its reconsideration decision? OPM did, yes. OPM said that the 1999 order was not acceptable for processing. Why shouldn't we just send this all back to OPM? I mean, they haven't even looked at the language of this order to determine whether it's sufficient or not. They have looked at the language of the order. OPM looked at the language of the 1999 order and said that it was not sufficient to create a survivor annuity. That's why it wasn't acceptable for processing. OPM uses the term acceptable for processing to mean it effectively does what the applicant says that it does. Can you point that to me before that is on record? Certainly. Okay. So if you look at the OPM's initial decision in June of 2006, that's on page 31 of the appendix. Okay. Well, I see at the bottom of the paragraph that rests, for instance, it says it was not a qualifying court order. Yes. Can we get to the analysis? Because if it just says it's not a qualifying court order, that suggests that they didn't consider it at all because they thought it fell into the gaps where most of them do, that they're submitted after retirement and they aren't qualifying. Correct. But if you look at page 833, that's where OPM engages in its analysis. And they say that the December 21, 1999 order is not a qualifying court order as stated in our July 24, 2004 decision to you. And they cite, if we want to look back at the June 24, 2004 decision, that's located at page 826. And it says that this court order, referring to the 1999 court order, expressly provides that your share of the employee annuity will continue after the death of the employee or retiree without differentiating between the benefits payable during the lifetime of the employee or retiree and a survivor annuity. That type of order is unacceptable. Is it clear, again, it's not clear to me that this July 2004 letter is referring to the 99 order or the 87 order? It isn't. How do we know it's referring to the 99 order instead of the 87 order? Well, OPM said that it is in its 2006 decision. When it referred to the 2004 decision, it said, for the reasons in that decision, the 1999 order is not acceptable. I see that they say it's unacceptable. And they also said in their letter, they said it's not a qualifying court order. By what authority does OPM reject a court order? My understanding is that the court has the last word, not OPM. Well, OPM is granted authority by the relevant statutory scheme to implement state court orders to the extent that they comply with federal retirement law. They don't say that this doesn't comply. They just say it's unacceptable. Well, they say it's unacceptable because it doesn't comply with OPM's regulations implementing federal statutes. And those regulations are federal law, just as the statutes are. No, the problem, it seems to me, is my recollection of this case is that the problem that you fess up to is that the board didn't deal with the 99 order. Am I right about that? That's correct. The board incorrectly believes that the 1999 court order was not effective because it wasn't the first order issued dividing the marital property. But that's actually a misstatement of the law governing it. So I'm going to parrot Judge Hughes' question at the outset, which is why, since it wasn't given the review to which it's entitled, we shouldn't just send it back to the board to take a look at it. Because it would be an unnecessary detour, Your Honor. This is a question of law. It's construction of the language of a court order. And with the result that this court would review any decision by the board construing the language of that order de novo, which suggests that there's no reason that the court shouldn't reach the question now. Well, it's interesting because I would think that even though we might well have authority to do what we want to do, that the government would typically be advocating that we send it back. Because the board, and certainly OPM, has more expertise in terms of understanding and appreciating how the government processes these claims under these judgments, whereas we get one every four or five years. So it's a little surprising to me that the government would rather have us do it in the first instance rather than the board. But having said that, why don't we look at the order, the 99 order. Paragraph 7G, the paragraph 4, I'm sorry, which is the new 7G. Yes, Your Honor. I mean, nothing in this world and no order I've ever seen is crystal clear about anything. But it seems to me that this could not envision anything other than her getting a portion of the order. Actually, Your Honor, we believe that that paragraph clearly is intended to provide that Ms. Smith's share of Mr. Marshall's employee annuity should continue after his death, which is something that's both an impossibility and that renders the order. Well, why would we read it as an impossibility then? I mean, if there are two possible readings, one is she keeps getting part of his retirement pension, the impossibility, or she gets a survivor annuity, why wouldn't we read it the second way? Because the requirement is not to grant a survivor annuity if it's ambiguous you lean in favor of the survivor annuity. It's the reverse. If it's ambiguous, there is no survivor annuity. I don't understand why it's that ambiguous. I mean, this paragraph is about surviving spouses. And they talk about Martha Marshall being the surviving spouse, and she's going to get everything as a surviving spouse. We're talking about surviving spouse benefits, except for those allocated to Arlene Marshall. Well, if Arlene Marshall had no entitlement to survival benefits, then this is meaningless. This is ridiculous. That's not actually the case, Your Honor. So if you look at the order as a whole, it reflects a fundamental misunderstanding on the part of the parties, and presumably state court as well, that an employee annuity and the share that the spouse received should continue after the employee's death. That was a problem that OPM had noticed in court orders, which is why it, in 1992, issued regulations stating that if an order provided that employee annuities could continue after the death of the employee, the order became unacceptable for processing. That was a problem because an employee annuity is not the same as a survivor annuity, not just as a formality, but as a substantive matter. As Judge Hughes observed earlier, the survivor annuity, the total pot of benefits available to go to all survivor annuities is 55% of what's available for the employee annuity. It's much smaller, which means that the parties understand that they may not want to make the same amount available out of the survivor annuity that they would have out of the full employee annuity. And then this, if you look at this order as a whole, it's clear that, and in particular, even if you look at paragraph 7G, that paragraph provides that Ms. Marshall will be Mr. Marshall's surviving spouse for all pension and retirement benefits available to a surviving spouse. A pension benefit is not available to a surviving spouse. But you always put that language in because who knows what it might be. There might be survivor money left. So any lawyer would say, as surviving spouse, all pension and retirement benefits go to the surviving spouse, right? No, Your Honor. In fact, that's precisely what you don't do. When you are preparing a state court order regarding OPM benefits, the obligation of the parties and their lawyers is to put in accurate language because OPM has made it clear. So you're not suggesting that no wife gets a survival annuity? Of course not, Your Honor. And in fact, OPM includes language in the appendix to its regulation that is model language for how to award a survivor annuity. And in fact, in 2001, Ms. Smith's lawyer sent exactly that language to Mr. Marshall's lawyer and said, would you please agree to this because we need to enter a new court order? And that order was never entered. This language... If this language was trying to be used by the other wife to get benefits, I know that's not the case because she's not the divorced spouse, you would say this language doesn't even give her benefits because it doesn't explicitly reference survivor benefits, even though it's talking about survivor spouse, surviving spouse. Correct, because this order refers to pension and retirement benefits. Both of those terms... Given that the board hasn't even considered any of this stuff and a lot of this stuff seems to not be fully considered by OPM given the sparse things you are pointing to me, why isn't it better to send this all back and have them look at it and give us the benefit of their advice before we have to review this? Your Honor, if the court believes that there could be more than one reasonable result in the interpretation of this language, or if it believes that it would benefit from the expertise of OPM and the board on remand, then certainly remand is what would be appropriate. We do not disagree with that. We simply believe that the language of the court order simply so clearly fails to award a survivor annuity that it's not necessary for remand. But in the circumstances that you described, one would be appropriate. Finally, I'd just like to point out, returning to the fact that it is our belief that this order is intended to award a portion of the employee annuity and that it impermissibly continue after the death of Mr. Marshall, the court explicitly says twice in this order that its purpose, the purpose of this order is, at the beginning of paragraph 7, to allow Arlene Marshall, quote, to retain a vested interest in the defendant's pension, end quote, and in paragraph 7E that the court's, quote, intent to provide plaintiff Ms. Marshall with, Ms. Smith now, with $338.60 per month of defendant's retirement benefits. Pension and retirement benefits under OPM regulations both mean employee annuity. Furthermore, paragraph 7G says that after Mr. Marshall's death, Ms. Marshall is to receive pension and retirement benefits except for those benefits allocated to the plaintiff in paragraph 1, which is paragraph 7B, and as the court has already observed, that paragraph refers quite clearly to a share of the employee annuity. But the intention when he retired, he answered the question, do you have a living former spouse from whom you were divorced and to whom a court order gives a survivor annuity? Yes. So certainly he contemplated that that was what had been arranged and that was what would continue. That may have been his understanding, Your Honor, but OPM's job is not to scour the record of an employee. We're not scouring the record. This is a critical document which states his intention, the intention which is reflected in the plain reading of the two court orders, and now OPM says don't bother us with what the court says. Oh, Your Honor, we certainly wouldn't suggest don't bother us with what the court says. That's the starting point, and that's why we don't reach this document because it is extrinsic evidence which cannot be considered unless first we say... His retirement document is extrinsic evidence that's not considered? It is extrinsic. But the whole thing is his intention when he retires, he received a reduced annuity because he was providing for surviving spouses, and he explicitly refers to this second survivor. As a matter of law, Your Honor, actually the question is not what his intent was. The question is what the state court's intent was when it issued the order. Their intent is easy. They say it's OPM that says we're not going to follow the court's intent. Your Honor, I think that that presupposes that we understand what the order means, and for all the reasons that I've argued, the order... and the employee rules and relations. I'm sorry, Your Honor. That wasn't what I meant. What I meant was that the order is the only evidence that we have of the state court's intent, and OPM's construction of the order says that the state court did not clearly, did not expressly provide for survivor annuity, and under federal law, because the order fails to expressly provide for that annuity, OPM cannot provide one. That is not a question of OPM. This was in your brief that was filed, not the petitioner's, this document. I'm sorry, Your Honor. You're referring to the application from the retirement. I'm referring to the retirement. I am, yes, Your Honor. But once again, this document becomes, under Fox, this document can be considered only if OPM were first to find, based on the language of the court order, that there was a provision referring to a survivor annuity, and that that provision could fairly be construed as awarding a survivor annuity, and for the reasons that we've discussed... But just let me clarify. I'm a little confused. A spouse is getting the entire survivor annuity. Yes, Ms. Marshall is getting it. So this is about which of the two, what portion of any of that survivor annuity. Your Honor, OPM pays the same amount no matter who prevails in this appeal. But returning simply to the language of the court order, the court order reflects a belief that the employee annuity can continue after the death of Mr. Marshall. That was a scenario that OPM was specifically targeting in 1992 when it amended its regulations to make clear that it's necessary when awarding a survivor annuity to distinguish between the employee annuity and the survivor annuity, which this order fails to do. Now, if the court believes that the court order here is so ambiguous that the consideration of extrinsic evidence is appropriate, as was the case in Fox, then certainly remand would be appropriate because the board would need to consider any such evidence in the first instance. So you've changed your mind about whether this is a question of law? No, Your Honor. But if the court were to determine that extrinsic evidence should be considered, which we don't believe as a matter of law that it needs to be, if the court were to make that determination, then it would be appropriate for the board to consider that evidence in the first instance, especially because this court does not have access to all of the extrinsic evidence that's in the record before the board. If there are no further questions, Your Honor, thank you. Your Honor, I just have, I believe, two follow-on points. The first is, if my friend here is changing her position a little bit about remand, I just wanted to point out that this isn't the first time the positions have flip-flopped in this case. I want to note for the court that both OPM and the Mayor's Systems Protection Board had gone back and forth many times about the case. It's not like the orders were always considered as not acceptable for processing. The petitioner, Ms. Smith, had received a letter from OPM previously that said that there was an order that was acceptable for processing. I'm not sure exactly which one that they had chosen, but I believe it was the 1999 modification where she received a letter in 2006 that said this was acceptable for processing. And then shortly she got a reversal. It was not acceptable for processing. Similarly, the first administrative law judge with the Mayor's Systems Protection Board issued a decision where she said the 1987 order did establish a survivor annuity. And her recommendation was to remand for determination of what effect, if any, that 1999 modification would have. And petitioner would urge the court, if remand is what we're talking about, that the court would take the same policy that first finds that 1987 order does establish a survivor annuity, and then remand to OPM for determination of what effect, if any, the 1999 modification has on that determination. And that concludes my argument, Your Honor. If there's no further questions from the court. Thank you. The case is submitted. That concludes my testimony.